UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM FLUELLEN,

    Plaintiff,

v.                                          CASE NO. 8:16-cv-335-T-23AEP

CITY OF PLANT CITY, et al.,

    Defendants.
_____/

**ORDER**

William Fluellen sues (Doc. 1) the City of Plant City, Florida, and Ahmed Elsedoudi, a former police officer in the Plant City Police Department. Alleging that Elsedoudi used excessive force during Fluellen's arrest, the complaint asserts a claim against each defendant for violation of Fluellen's constitutional rights (Count I), a claim against Elsedoudi for battery (Count II), and a claim against Plant City for "deliberate indifference" (Count III). (Doc. 1 ¶¶ 22–26, 27–30, 31–36) Plant City moves (Doc. 6) to dismiss, and Elsedoudi moves (Doc. 14) to dismiss or for summary judgment. In support of the motion, Elsedoudi submits two affidavits and two surveillance videos (Docs. 10, 12, 13), and an August 2016 order (Doc. 30) converts Elsedoudi's motion to a motion for summary judgment.[1]

---

[1] "Whenever a judge considers matters outside the pleadings in a [motion to dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure], that motion is thereby converted into a Rule 56 Summary Judgment motion." *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1267 (11th Cir. 2002).

**BACKGROUND**

**1. Factual Background**

In February 2012, the Plant City Police Department received a report of shoplifting by two suspects at a Wal-Mart. According to the report, the two suspects remained at the Wal-Mart, and one "was possibl[y] armed with a knife." (Doc. 13 at 1) Elsedoudi, Officer Robert Kleeman, and Officer Mike Zaccaro were dispatched to the Wal-Mart by the Plant City Police Department. (Doc. 13 at 1; Doc. 31 at 6)

The officers arrived at the Wal-Mart, and Kleeman and Elsedoudi waited at an exit. (Doc. 12 at 2; Doc. 13 at 1–2; Doc. 31 at 6) Using video surveillance equipment in Wal-Mart's "loss-prevention room," Zaccaro confirmed the shoplifting and described to Kleeman and Elsedoudi the first suspect, whom the officers later identified as Fluellen. (Doc. 13 at 1–2; Doc. 31 at 6) Observing Fluellen walk toward an exit, Kleeman and Elsedoudi approached Fluellen, explained that Fluellen "was being arrested for shoplifting," and told Fluellen to "place his hands behind his back." (Doc. 13 at 2; Doc. 31 at 6)

Fluellen refused to allow the officers to handcuff him, resisted the officers' verbal commands, and reached toward his left pants pocket. (Doc. 12 at 2; Doc. 13 at 2; Doc. 31 at 5, 6) Observing a knife in the pocket, Elsedoudi commanded Fluellen to stop reaching toward the pocket. (Doc. 13 at 2; Doc. 31 at 5) Because Fluellen refused to comply with Elsedoudi's command and in an effort to surmount

- 2 -

Fluellen's resistance and to handcuff Fluellen, Elsedoudi kneed Fluellen in the leg. (Doc. 12 at 2; Doc. 13 at 2; Doc. 31 at 5)

After handcuffing Fluellen, Kleeman and Elsedoudi escorted Fluellen to Wal-Mart's loss-prevention room,[2] where Kleeman pushed Fluellen into a chair. (Doc. 12 at 2–3; Doc. 13 at 2; Doc. 31 at 6) Fluellen slid his cuffed hands underneath his body and told the officers "to get [their] hands off him." (Doc. 12 at 3; Doc. 13 at 2) Intending to surmount Fluellen's resistance to a search, Elsedoudi pressed a taser against Fluellen's left shoulder. (Doc. 12 at 3; Doc. 13 at 2) However, Elsedoudi neither activated nor deployed the taser; instead, Elsedoudi waited. (Doc. 12 at 3; Doc. 13 at 2) Fluellen surrendered to Elsedoudi's threat of force and complied temporarily with the officers' commands. Elsedoudi holstered the taser. (Doc. 12 at 3; Doc. 13 at 2)

Patting the exterior of Fluellen's trousers, Kleeman found a knife and some items stolen from the Wal-Mart. (Doc. 12 at 3; Doc. 13 at 2; Doc. 31 at 6) Elsedoudi manually secured Fluellen and lifted Fluellen from the chair, and Kleeman and Elsedoudi searched Fluellen's shirt and jacket. Elsedoudi pressed Fluellen against a wall, where the officers continued inspecting Fluellen's jacket, in which

---

[2] The surveillance videos submitted by Elsedoudi depict from different vantages the portion of the episode that occurred in the loss-prevention room. Because the "record contains a videotape of the arrest, . . . we are able to determine whether [the defendant] used excessive force 'in the light depicted by the videotape.'" *Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013) (quoting *Scott v. Harris*, 550 U.S. 372, 380–81 (2007)).

Kleeman discovered a second knife.  (Doc. 12 at 3; Doc. 13 at 2)  The officers completed the search, and Fluellen returned voluntarily to the chair.

Elsedoudi and Zaccaro left the loss-prevention room to arrest the second suspect, whom the officers later identified as Fluellen's wife.  (Doc. 12 at 4; Doc. 13 at 2)  Elsedoudi and Zaccaro handcuffed and escorted Fluellen's wife to the loss-prevention room.  (Doc. 12 at 4; Doc. 13 at 2)

According to Elsedoudi, Fluellen "became more belligerent upon seeing his wife in handcuffs."  (Doc. 12 at 4)  Kleeman told Elsedoudi to remove Fluellen from the loss-prevention room and to escort Fluellen to a patrol car.  (Doc. 13 at 3) Fluellen "did not want to leave the room and continued to resist being moved." (Doc. 13 at 3)  Elsedoudi secured Fluellen by the left arm, lifted him from the chair, held him by the nape, and guided him toward the door.  (Doc. 12 at 4; Doc. 13 at 3) Fluellen "brace[d] his legs to prevent being moved."  (Doc. 12 at 4)  Elsedoudi kneed the back of Fluellen's legs "to get [Fluellen] moving."  (Doc. 12 at 4)  Elsedoudi and Fluellen struggled, and during the struggle Elsedoudi pressed Fluellen against a wall and into a filing cabinet.  (Doc. 12 at 4)  With Zaccaro's help, Elsedoudi gained control of Fluellen and escorted Fluellen from the loss-prevention room and to a patrol car.  (Doc. 12 at 5; Doc. 13 at 3)

The officers arrested Fluellen and his wife for shoplifting more than forty items of merchandise.  (Doc. 31 at 6–7)

**2. Procedural Background**

Asserting qualified immunity, Elsedoudi moves for summary judgment and submits his own affidavit, an affidavit from Kleeman, and two surveillance videos depicting the part of Fluellen's arrest that occurred in the loss-prevention room. (Docs. 10, 12, 13, 14)  The August 2016 order allows Fluellen to "supplement the record with admissible facts supporting the facts on which the complaint depends." (Doc. 30 at 2)

In response, Fluellen files (Docs. 29, 31) two handwritten motions "asking that [this] case continue."[3]  Each motion comprises statements, which are neither sworn nor declared as true under penalty of perjury and which purportedly rebut statements in Elsedoudi's motion.[4]  Also, Fluellen submits a one-page letter written by Bill McDaniel, a former Chief of Police for the Plant City Police Department; Fluellen's

---

[3] After the defendants moved to dismiss or for summary judgment, Fluellen's lawyer moved to withdraw because "irreconcilable differences" developed between Fluellen and his lawyer and because Fluellen failed to respond to correspondence. (Doc. 21 at 1) A June 2016 order grants the lawyer's motion to withdraw and warns Fluellen that, "unless he obtains substitute counsel, he will proceed in this matter *pro se* and be expected to adhere" to case deadlines and "to the procedural requirements of the Federal Rules of Civil Procedure and the Local Rules for the Middle District of Florida." (Doc. 24 at 1–2) Fluellen failed to obtain substitute counsel and as a result appears *pro se*.

[4] "Although *pro se* litigants are not held to the same standards of compliance with formal or technical pleadings rules applied to attorneys, we have never allowed such litigants to oppose summary judgments by the use of unsworn materials." *Jordan v. Conway*, 441 Fed. Appx. 761, 764 (11th Cir. 2011) (per curiam) (quoting *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980)).

arrest report; and a copy of Elsedoudi's motion for summary judgment annotated by Fluellen.[5]  (Doc. 31 at 3–26)

## DISCUSSION

**I. Count I**

Under 42 U.S.C. § 1983, Count I asserts that Elsedoudi used excessive force against Fluellen during Fluellen's arrest, and as a result Elsedoudi and Plant City violated Fluellen's constitutional rights.  (Doc. 1 ¶¶ 22–26)

**A. Elsedoudi**

Under Section 1983, a plaintiff may sue a person who acts under color of state law and who violates the plaintiff's constitutional rights.  *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009).  But, because the "threat of litigation may stymie a police officer's ability to perform his duties effectively," qualified immunity protects completely a police officer from Section 1983 liability if the officer acts within his discretionary authority and if the officer violates no clearly established constitutional right.  *Garczynski*, 573 F.3d at 1166 (internal quotation marks omitted).

Based on qualified immunity, Elsedoudi moves for summary judgment.  To establish a qualified-immunity defense, a police officer must first show that he acted within his discretionary authority.  *Mobley v. Palm Beach County Sheriff Dept.*, 783 F.3d

---

[5] Fluellen writes in the margins of Elsedoudi's motion exclamations (e.g., "Well, he lied!") and rhetorical questions (e.g., "Do the cameras at Walmart have x-ray vision?"). (Doc. 31 at 8–26)

1347, 1352 (11th Cir. 2015). Acts "within [an officer's] job responsibilities" are discretionary. *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004). Because arresting a suspected criminal is the responsibility of a police officer, in arresting Fluellen, Elsedoudi acted within his discretionary authority. *See Crosby*, 394 F.3d at 1332. If a police officer establishes that he acted within his discretionary authority, the burden shifts to the plaintiff, who must demonstrate that the officer violated a clearly established constitutional right. *Mobley*, 783 F.3d at 1353.

"Freedom from unreasonable searches and seizures under the Fourth Amendment encompasses the right to be free from excessive force" during an arrest. *Mobley*, 783 F.3d at 1353 (internal quotation marks omitted). A claim that a police officer used excessive force is analyzed "under the Fourth Amendment's objective reasonableness standard," in which the officer's acts are viewed "from the perspective of a reasonable officer on the scene." *Mobley*, 783 F.3d at 1353. Determining whether the use of force was reasonable requires an examination of whether the suspect posed a threat to the safety of the arresting officer or others, whether the suspect resisted arrest, whether the officer injured the suspect, and whether the need for force was commensurate with the amount of force used. *See Mobley*, 783 F.3d at 1353.

While Kleeman and Elsedoudi attempted to handcuff Fluellen, Elsedoudi kneed Fluellen in the leg. (Doc. 12 at 2; Doc. 13 at 2; Doc. 31 at 5) Before the

officers searched Fluellen for weapons and stolen items, Elsedoudi threateningly pressed a taser against Fluellen's shoulder but, after Fluellen complied, withheld application of the taser.  (Doc. 12 at 3; Doc. 13 at 2)  During the officers' search of Fluellen, Elsedoudi secured Fluellen, lifted Fluellen from a chair, and pressed Fluellen against a wall.  (Doc. 12 at 3; Doc. 13 at 2)  After Kleeman told Elsedoudi to escort Fluellen from the loss-intervention room and to a patrol car, Elsedoudi grabbed Fluellen by the arm and by the nape of the neck, pulled Fluellen from a chair, kneed Fluellen, and pressed Fluellen against a wall and into a filing cabinet.  (Doc. 12 at 4–5; Doc. 13 at 3)

     The undisputed facts demonstrate that each act was reasonable.  While attempting to handcuff Fluellen, Elsedoudi observed a knife in Fluellen's left pants pocket.[6]  (Doc. 12 at 2; Doc. 13 at 2; Doc. 31 at 5)  Further, before and after Kleeman confiscated Fluellen's knives, Fluellen prompted each act of force by disobeying, verbally berating, and physically defying the officers.  For instance, while attempting to escort Fluellen from the loss-prevention room and to a patrol car, Elsedoudi kneed Fluellen, but Fluellen induced the use of force by "brac[ing] his legs to prevent being moved" and by "push[ing] back" against Elsedoudi.  (Doc. 12 at 4)  Because Fluellen

---

[6] Fluellen's motions assert that Fluellen "never had a knife as claimed." (Doc. 29 at 2) Fluellen submits no evidence supporting this assertion, and Elsedoudi's and Kleeman's affidavits state that, during the search, Kleeman confiscated two knives from Fluellen. (Doc 12 at 3; Doc. 13 at 2) A review of the surveillance videos confirms that during Fluellen's arrest Kleeman confiscated from Fluellen at least one knife.

- 8 -

failed to yield to the officers' instruction, a struggle ensued until Elsedoudi overpowered Fluellen's resistance by pressing Fluellen against a wall and into a filing cabinet. "[N]oncompliance or continued physical resistance to arrest justifies the use of force." *Barfield v. Rambosk*, 641 Fed. Appx. 845, 848 (11th Cir. 2015) (per curiam). Finally, Fluellen neither alleges nor proves that he suffered an injury during the arrest.[7] Under the circumstances Elsedoudi's use of force was generally proportional to the need for force. *See Mobley*, 783 F.3d at 1353 ("[T]he right to make an arrest necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.") (internal quotation marks omitted).

Citing McDaniel's letter, Fluellen argues that the "Internal Affairs department and Chief Bill McDaniel seemed to find enough evidence to support [Fluellen's] claim." (Doc. 31 at 2, 3) McDaniel's letter states that "[a]dministrative action has been taken against" Elsedoudi because an "investigation established" that Elsedoudi violated the Plant City Police Department's "standard operating procedures." (Doc. 31 at 3) However, McDaniel's letter fails to identify the particular "standard operating procedures" Elsedoudi purportedly violated, the particular acts that

---

[7] A "minimal amount of force and injury . . . will not defeat an officer's qualified immunity in an excessive force case." *Nolin v. Isbell*, 207 F.3d 1253, 1258 (11th Cir. 2000) (concluding that, by grabbing the plaintiff, shoving the plaintiff "a few feet against a vehicle," pushing a knee into the plaintiff's back, pushing the plaintiff's head against a vehicle, and searching the plaintiff's "groin area in an uncomfortable manner," the defendant used only minimal force); *see also Myers*, 713 F.3d at 1327 (concluding that, by grabbing the plaintiff's arm, pulling the plaintiff from a truck, and wrestling the plaintiff to the ground, the defendant used only minimal force).

violated those procedures, or the consequence, if any, of the reported violation. Further, Fluellen fails to submit other evidence explaining the basis for Elsedoudi's discipline. Regardless, McDaniel's terse letter fails to rebut the other evidence — Elsedoudi's affidavit, Kleeman's affidavit, the surveillance videos, and Fluellen's arrest report — establishing that during Fluellen's arrest Elsedoudi acted reasonably.

Because Fluellen fails to demonstrate that Elsedoudi violated Fluellen's constitutional rights, Elsedoudi is entitled to qualified immunity. *See Mobley*, 783 F.3d at 1352–53, 56.

**B. Plant City**

Under Section 1983, Count I asserts that Plant City violated Fluellen's constitutional rights because during Fluellen's arrest Elsedoudi used excessive force. As discussed above, Fluellen fails to demonstrate that Elsedoudi used excessive force. Further, although a municipality "may be subject to liability under § 1983, a plaintiff cannot rely upon the doctrine of respondeat superior to hold the [municipality] liable." *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1328 (11th Cir. 2015); *accord Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 691 (1978) ("[A] municipality cannot be held liable solely because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.") (emphasis removed). Instead, a plaintiff must establish

that the municipality "has a policy or custom that caused the injury." *Weiland*, 792 F.3d at 1328 (internal quotation marks omitted). Thus, containing no allegation (credible or otherwise) of a city policy, custom, practice, or the like, Count I fails.

## II. Count II

Count II asserts against Elsedoudi a battery claim. (Doc. 1 ¶¶ 27–30) "An officer is liable for [battery] only where the force used is clearly excessive." *Gomez v. United States*, 601 Fed. Appx. at 851 (11th Cir. 2015) (Hull, J.) (quoting *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. 3rd DCA 1996) (Gersten, J.)). Because Fluellen fails to show that Elsedoudi used excessive force, Count II fails.

## III. Count III

Count III asserts, "Whatever policies . . . Plant City had were insufficient to properly instruct [Plant City's] officers in lawful post arrest procedures" and that "this failure to train amounts to deliberate indifference to the rights of [Plant City's] citizens." (Doc. 1 ¶¶ 31–36) If a police officer "violates another's constitutional rights, [a] city may be liable if it had a policy or custom of failing to train its employees and that failure to train caused the constitutional violation." *Garczynski*, 573 F.3d at 1170; *accord Weiland*, 792 F.3d at 1328. Analysis of a city's "custom or policy is unnecessary, however, when no constitutional violation has occurred." *Garczynski*, 573 F.3d at 1170. Because Fluellen fails to show that Elsedoudi violated Fluellen's constitutional rights by the use of excessive force, Count III fails.

## CONCLUSION

Accordingly, the defendants' motions (Docs. 6, 14) are **GRANTED**. The clerk is directed to (1) to enter judgment for the defendants and against Fluellen, (2) to terminate any pending motion, and (3) to close the case.

ORDERED in Tampa, Florida, on November 15, 2016.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE